**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese (*pro hac vice* forthcoming)
Alec M. Leslie (*pro hac vice* forthcoming)
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
          aleslie@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
630 Fifth Avenue, Suite 2000
New York, NY 10111
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORINA

| | |
|---|---|
| AMANDA MCCLURE, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GROCERY DELIVERY E-SERVICES USA INC. D/B/A HELLOFRESH,<br><br>Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Amanda McClure ("Plaintiff") brings this action individually and on behalf of all others similarly situated against Defendant Grocery Delivery E-Services Usa Inc., d/b/a HelloFresh ("HelloFresh" or "Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## **INTRODUCTION**

1.      This is a putative class action lawsuit against Defendant for engaging in an illegal "automatic renewal" scheme with respect to its subscription sports broadcasting and streaming services across its network sites (collectively, the "HelloFresh Subscriptions," enumerated below) through its website at https://www.HelloFresh.com (the "HelloFresh Website"). Defendant is an international food delivery company that, among other activities, delivers pre-portioned ingredients and recipes as an alternative to traditional grocery shopping.  Relevant to Plaintiff's allegations, when consumers sign up for the HelloFresh Subscriptions through the HelloFresh Website, Defendant actually enrolls consumers in a program that automatically renews customers' HelloFresh Subscriptions from week-to-week and results in weekly charges to the consumer's credit card, debit card, or third-party payment account (collectively, "Payment Method"). In doing so, Defendant fails to provide the requisite disclosures and authorizations required to be made to and obtained from California consumers under California's Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*

2.      Through the HelloFresh Website, Defendant markets, advertises, and sells to consumers in California and throughout the United States paid memberships to the HelloFresh Subscriptions, which include food delivery kits based on its customers' food preferences and number of servings per week (collectively, the "HelloFresh Subscriptions"). To sign up for one of Defendant's HelloFresh Subscriptions through the HelloFresh Website, customers must provide Defendant with their billing information and Defendant then automatically charges customers' Payment Method as payments become due, typically on a weekly basis. Defendant is able to unilaterally charge its customers' renewal fees without their consent, as Defendant is in possession of its customers' billing information. Thus, Defendant has made the deliberate decision to charge

Plaintiff and other similarly situated customers on a weekly basis, absent their consent under the ARL, relying on consumer confusion and inertia to retain customers, combat consumer churn, and bolster its revenues.

3.      Pursuant to the ARL, online retailers who offer automatically renewing subscriptions to California consumers must: (a) obtain affirmative consent prior to the consumer's purchase; (b) provide the complete auto-renewal terms in a clear and conspicuous manner and in visual proximity to the request for consent prior to the purchase; and (c) provide an acknowledgement identifying an easy and efficient mechanism for consumers to cancel their subscriptions. As will be discussed below, the enrollment process for the HelloFresh Subscriptions through the HelloFresh Website uniformly violates each of the core requirements of the ARL.

4.      Specifically, Defendant systematically violates the ARL by: (i) failing to present the automatic renewal offer terms in a clear and conspicuous manner and in visual proximity to the request for consent to the offer before the subscription or purchasing agreement is fulfilled, in violation of Section 17602(a)(1); (ii) charging consumers' Payment Method without first obtaining their affirmative consent to the agreement containing the automatic renewal offer terms, in violation of Section 17602(a)(2); and (iii) failing to provide an acknowledgment that includes the automatic renewal offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in direct violation of Sections 17602(a)(3) and 17602(b). Cal. Bus. & Prof. Code §§ 17602(a)(l), (a)(2), (a)(3), (b). As a result, the HelloFresh Subscriptions, which include food delivery kits granted to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" under the ARL. Cal. Bus. & Prof. Code § 17603.

5.      For the foregoing reasons, Plaintiff brings this action individually and on behalf of all California purchasers of any of Defendant's HelloFresh Subscriptions offerings who, within the applicable statute of limitations period up to and including the date of judgment in this action, incurred unauthorized fees for the renewal of their HelloFresh Subscriptions. Based on Defendant's unlawful conduct, Plaintiff seeks damages, restitution, declaratory relief, injunctive relief, and reasonable attorneys' fees and costs, for: (i) violation of California's Unfair Competition Law

1   ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (ii) violation of California's False Advertising

2   Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (iii) violation of California's Consumers

3   Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (iv) conversion; and (iv) unjust

4   enrichment/restitution.

5   <u>**THE PARTIES**</u>

6       6.      Plaintiff Amanda McClure is a citizen of California, residing in Marina, California.

7   On or around March 11, 2022, Ms. McClure purchased a HelloFresh Subscription from

8   Defendant's Website while residing in California.  During the enrollment process, but before

9   finally consenting to Defendant's subscription offering, Ms. McClure provided her Payment

10  Method information directly to Defendant.  At the time that Ms. McClure enrolled in her

11  HelloFresh Subscription program, Defendant did not disclose to Ms. McClure all of the required

12  automatic renewal offer terms associated with the subscription program or obtain Ms. McClure's

13  affirmative consent to those terms.  Further, after Ms. McClure completed her initial order (which

14  was free after applying the Defendant's promotional code), Defendant sent Ms. McClure an email

15  confirmation and receipt for her purchase of and enrollment in the HelloFresh Subscription (the

16  "Acknowledgment Email").  However, the Acknowledgment Email, too, failed to provide Ms.

17  McClure with the complete automatic renewal terms that applied to Defendant's offer, a

18  description of Defendant's full cancellation policy, or information regarding how to cancel Ms.

19  McClure's HelloFresh Subscription in a manner capable of being retained by her.  Ms. McClure did

20  not receive any other acknowledgement that contained the required information.  As a result, Ms.

21  McClure was not placed on notice of several material terms associated with her HelloFresh

22  Subscription.  In particular, Ms. McClure was not made aware of the recurring price to be charged

23  upon renewal, the length of the renewal term, when the first charge would occur, or the complete

24  cancellation policy associated with her HelloFresh Subscription: the most crucial aspects of which

25  were missing from the Checkout Page and the Acknowledgment Email.  Nevertheless, on

26  Wednesday, March 23, 2022, Defendant automatically renewed Ms. McClure's HelloFresh

27  Subscription and charged Ms. McClure's Payment Method approximately $69.93. Defendant

28  charged Mr. McClure's Payment Method again on March 30, 2022 for $69.93.  Promptly after

learning of Defendant's deceptive recurring charges, on or around Tuesday, April 5, 2022, Ms. McClure canceled her HelloFresh Subscription via Defendant's Website in order to avoid incurring any additional future charges. Nevertheless, Defendant imposed a charge of 69.93 the day after Ms. McClure's cancelation. Defendant's missing and/or incomplete disclosures on the Checkout Page and in the Acknowledgment Email for the HelloFresh Subscription, its failure to obtain Ms. McClure's affirmative consent to the offer terms associated with the HelloFresh Subscription before charging her Payment Method on a recurring basis, runs contrary to the ARL, which deems products provided in violation of the statute to be a gift to consumers.  *See* Cal. Bus. & Prof. Code § 17603.  Had Defendant complied with the ARL, Ms. McClure would have been able to read and review the pertinent automatic renewal offer terms prior to purchase, and she would not have subscribed to the HelloFresh Subscription at all or on the same terms or she would have cancelled her HelloFresh Subscription earlier, *i.e.*, prior to the two charges following her free promotional delivery. As a direct result of Defendant's violations of the ARL, Ms. McClure suffered, and continues to suffer, economic injury.

7.     Defendant Grocery Delivery E-Services Usa Inc., d/b/a HelloFresh ("HelloFresh" or "Defendant") is a Delaware corporation with its principal place of business at 28 Liberty Street, New York, New York 10005.  Defendant is an international food delivery company that markets, sells, and delivers meal kits to consumers throughout California and nationwide. Defendant is also responsible for the promotion, advertisement, and/or marketing of the automatically renewing HelloFresh Subscriptions, and it owns and operates the HelloFresh Website, where it markets and sells its HelloFresh Subscriptions. Defendant sells HelloFresh Subscriptions in California and has done business throughout New York, and throughout the United States, at all times during the Class Period.  Defendant also made automatic renewal or continuous service offers to consumers in California and New York, and throughout the United States, via the HelloFresh Website during the Class Periods.

8.     Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of

Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.

10.      This Court has personal jurisdiction over the parties because Plaintiff resides in California and submits to the jurisdiction of the Court, and because Defendant has, at all times relevant hereto, systematically and continually conducted business in California, including within this District, and/or intentionally availed itself of the benefits and privileges of the California consumer market through the promotion, marketing, and sale of its products and/or services to residents within this District and throughout California. Additionally, Plaintiff purchased her HelloFresh Subscription from Defendant while in California.

11.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Also, Plaintiff resides in this District and purchased Defendant's HelloFresh Subscription in this District. Moreover, Defendant systematically conducts business in this District and throughout the State of California, and it distributed, advertised, and sold the HelloFresh Subscriptions to Plaintiff and Class Members in this State and District.

**FACTUAL ALLEGATIONS**

**A.      Background On The Subscription e-Commerce Market**

12.      The e-commerce subscription model is a business model in which retailers provide ongoing goods or services "in exchange for regular payments from the customer."[1]   Subscription e-commerce services target a wide range of customers and cater to a variety of specific interests.

---

[1] *See* https://www.coredna.com/blogs/ecommerce-subscription-services.

Given the prevalence of online and e-commerce retailers, subscription e-commerce has grown rapidly in popularity in recent years. Indeed, the "subscription economy has grown more than 400% over the last 8.5 years as consumers have demonstrated a growing preference for access to subscription services[.]"[2] Analysts at UBS predict that the subscription economy will expand into a $1.5 trillion market by 2025, up from $650 billion in 2020.[3] That constitutes an average annual growth rate of 18%, which makes the subscription economy "one of the fastest-growing industries globally.[4]

13.    As noted above, the production, sale, and distribution of subscription-based products and services is a booming industry that has exploded in popularity over the past few years. According to Forbes, "[t]he subscription e-commerce market has grown by more than 100% percent a year over the past five years, with the largest retailers generating more than $2.6B in sales in 2016, up from $57.0M in 2011."[5]  Following 2016, market growth within the industry increased exponentially, reaching $650 billion in 2020.[6]  "As such, the financials of companies

---

[2] Business Insider, *Taco Bell's taco subscription is rolling out nationwide — here's how to get it* (January 6, 2022), https://www.businessinsider.com/taco-bell-subscription-launching-across-the-country-2022-1 (internal quotation marks omitted).

[3] *See* UBS, *Investing in digital subscriptions* (March 10, 2021), https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html ("[A]t close to USD 650 billion in 2020, we expect the subscription economy to expand into a USD 1.5 trillion market by 2025, implying an average annual growth rate of 18%."). *See also* Subscribed, *UBS Declares: It's Worth Investing in the Subscription Economy* (April 17, 2021), https://www.subscribed.com/read/news-and-editorial/ubs-declares-its-worth-investing-in-the-subscription-economy; Business 2 Community, *The Subscription Economy Is Booming Right Now. But Are You Reaping the Full Benefits?* (October 7, 2021), https://www.business2community.com/ecommerce/the-subscription-economy-is-booming-right- now-but are-you-reaping-the-full-benefits-02434851.

[4] UBS, Investing in digital subscriptions (Mar. 10, 2021), supra ("[Growth] was seen across many areas, including e-commerce, video streaming, gaming, cloud-based applications, etc."); see also Juniper Research, Subscriptions For Physical Goods To Overtake Digital Subscriptions By 2025; Growing To Over $263bn Globally (Oct. 12, 2020), https://www.juniperresearch.com/press/subscriptions-for-physical-goods-to-overtake (acknowledging "the significant lead the digital sector has had in th[e] area[ of digital service subscriptions]").

[5] The State Of The Subscription Economy, 2018, Forbes (Mar. 4, 2018), https://www.forbes.com/sites/louiscolumbus/2018/03/04/the-state-of-the-subscription-economy-2018/#6ad8251a53ef.

[6] See UBS, Investing in digital subscriptions (Mar. 10, 2021), available at https://www.ubs.com/global/en/wealth-management/our-approach/marketnews/article.1525238.html.

---

with subscription business models[] … improved dramatically in 2020 thanks to limited revenue volatility and strong cash flow generation."[7]  Thus, "[t]he share prices of most subscription companies have performed well in recent years."[8]

14.     The expansion of the subscription e-commerce market shows no signs of slowing. "We're now in the subscriptions era, and the pandemic is accelerating its takeover. During the COVID-19 lockdowns, many digital-based subscription business models fared well due to their promise of convenience and strong business continuity."[9]  According to *The Washington Post*, "[s]ubscriptions boomed during the coronavirus pandemic as Americans largely stuck in shutdown mode flocked to digital entertainment[.] … The subscription economy was on the rise before the pandemic, but its wider and deeper reach in nearly every industry is expected to last, even after the pandemic subsides in the United States."[10]

15.     However, as *The Washington Post* has noted, there are downsides associated with the subscription-based business model. While the subscription e-commerce market has low barriers and is thus easy to enter, it is considerably more difficult for retailers to dominate the market due to the "highly competitive prices and broad similarities among the leading players."[11]  In particular, retailers struggle with the fact that "[c]hurn rates are high, [] and consumers quickly cancel services that don't deliver superior end-to-end experiences."[12]  Yet, retailers have also recognized that, where the recurring nature of the service, billing practices, or cancellation process is unclear or complicated, "consumers may lose interest but be too harried to take the extra step of canceling

---

[7] *Id.*

[8] *Id.*

[9] UBS, Investing in digital subscriptions (Mar. 10, 2021), https://www.ubs.com/global/en/wealth-management/our- approach/marketnews/article.1525238.html.

[10] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ (noting that "e-commerce and entertainment subscriptions to sites such as Netflix, Hulu and Disney Plus made headlines during the pandemic for soaring growth").

[11] McKinsey & Company, *Thinking inside the subscription box: New research on e-commerce consumers*, (February 2018), https://www.mckinsey.com/industries/technology-media-and-telecommunications/our-insights/thinking- inside-the-subscription-box-new-research-on-ecommerce-consumers#0.

[12] *Id.*

their membership[s]."[13]  As these companies have realized, "[t]he real money is in the inertia."[14] As a result, "[m]any e-commerce sites work with third-party vendors to implement more manipulative designs."[15]  That is, to facilitate consumer inertia, a number of subscription e-commerce companies, including Defendant, "are now taking advantage of subscriptions in order to trick users into signing up for expensive and recurring plans. They do this by intentionally confusing users with their app's design and flow, … and other misleading tactics[,]" such as failure to fully disclose the terms of its automatic-renewal programs.[16]

16.     To make matters worse, once enrolled in the subscription, "[o]ne of the biggest complaints consumers have about brand/retailers is that it's often difficult to discontinue a subscription marketing plan."[17] Moreover, "the rapid growth of subscriptions has created a host of challenges for the economy, far outpacing the government's ability to scrutinize aggressive marketing practices and ensure that consumers are being treated fairly, consumer advocates say."[18]

17.     Thus, although "Federal Trade Commission regulators are looking at ways to make it harder for companies to trap consumers into monthly subscriptions that drain their bank accounts [and] attempting to respond to a proliferation of abuses by some companies over the past few

---

[13]Washington Post, *Little-box retailing: Subscription services offer new possibilities to consumers, major outlets* (April 7, 2014), https://www.washingtonpost.com/business/economy/tktktktk/2014/04/07/f68135b6-a92b-11e3-8d62-419db477a0e6_story.html.

[14] *Id.*

[15] Business Insider, *A new study from Princeton reveals how shopping websites use 'dark patterns' to trick you into buying things you didn't actually want* (June 25, 2019), https://www.businessinsider.com/dark-patterns-online- shopping-princeton-2019-6.

[16] TechCrunch, *Sneaky subscriptions are plaguing the App Store* (October 15, 2018), https://techcrunch.com/2018/10/15/sneaky-subscriptions-are-plaguing-the-app-store/.

[17] The Washington Post, *Everything's becoming a subscription, and the pandemic is partly to blame* (June 1, 2021), https://www.washingtonpost.com/business/2021/06/01/subscription-boom-pandemic/ ("'Subscription services are a sneaky wallet drain,' said Angela Myers, 29, of Pittsburgh. 'You keep signing up for things and they make it really hard to cancel.'"); *see also* New Media and Marketing, *The problem with subscription marketing* (Mar. 17, 2019), https://www.newmediaandmarketing.com/the-problem-with-subscription-marketing/.

[18] *Id.*

---

years[,]"[19]  widespread utilization of these misleading dark patterns and deliberate omissions persist.

18.     Defendant has successfully implemented this tactic. "HelloFresh has been eating up meal kit market share. HelloFresh had sizzling sales in the early months of COVID-19, as consumers turned to subscription services to fill basic needs. While some of these meal kit companies—Home Chef, Marley Spoon, and HelloFresh—experienced rising sales between 2019 and 2021, HelloFresh's sales growth outpaced its competitors, which contributed to its increased market share."[20]  "At the end of 2021, HelloFresh had roughly 7.2 million active customers while Blue Apron had only 336,000. In the U.S. alone, the only country where Blue Apron operates, HelloFresh has approximately 3.5 million active subscribers."[21] Defendant's dominance over the US food delivery market is directly linked to its aggressive, and deceptive, marketing tactics: "HelloFresh may be everywhere in digital marketing—an omnichannel approach if there ever was one—but they don't stop there. HelloFresh spends millions on TV ads, print advertising, and direct mail. They're on the walls of your subway station. They buy billboard space as the opportunity will soon disappear."[22]

**B.     Defendant's Dark Patterns And Online Consumer Complaints About The HelloFresh Subscriptions**

19.     Defendant's recent growth in revenues and subscriber count with respect to its HelloFresh Subscriptions coincides with a sharp decline in subscriber satisfaction as the HelloFresh Website and accompanying marketing have become riddled with "dark patterns."  Dark patterns are "tricks used in websites and apps that make you do things that you didn't mean to, like

---

[19] *Id.*

[20] Bloomberg Second Measure, *Competition heats up among meal kit companies like Blue Apron and HelloFresh* (Feb. 23, 2022), https://secondmeasure.com/datapoints/meal-kit-competitors-blue-apron-nyse-aprn-hellofresh-customer-retention-market-share/.

[21] Statista, *Global number of active subscribers of HelloFresh and Blue Apron 2016-2021* (March 4, 2022) https://www.statista.com/statistics/947620/meal-kit-companies-number-subscribers-worldwide/

[22] BANKNOTES, *Meal-Kit world dominance vs. high customer churn* (Jun. 28, 2022), https://hashtagpaid.com/banknotes/meal-kit-world-dominance-vs-high-customer-churn.

buying or signing up for something."[23] Consumers have complained on social media outlets both about Defendant's misleading enrollment process as well as its confusing cancellation process. One recent consumer complaint posted on Reddit that "I have an offer for 16 free meals plus free shipping for the first week. I just want to do one week, but will I be allowed to cancel after I get my first box? It would be scheduled for Wednesday, March 23rd. Do I cancel after the first box arrives? When do I need to cancel by? I don't want to be charged after the first box."[24] Yet another consumer posted on Twitter "@HelloFresh do not order ! You can never cancel ! I canceled and open an email and they reactivated my account. I was on vacation last week, I didn't have Hello fresh on my mind. Think If they do this to enough people, how much money they make!"[25] Defendant's utilization of these dark patterns – especially in conjunction with its failure to fully disclose the terms of its automatic-renewal programs (discussed further below) – has led to a reduction in churn rates by making it next to impossible for subscribers to cancel their HelloFresh Subscriptions. It has further led to an increase in accidental or unintentional sign-ups by consumers for paid HelloFresh Subscriptions plans, in effect increasing subscriber count and, thus, Defendant's overall revenues from renewal fees.

    20.    In fact, Defendant's conduct has drawn the attention and ire of customers across the country, with countless angry customers taking to the Internet to voice their discontent over Defendant's broken promises. For instance, numerous subscribers have left scathing reviews on the Better Business Bureau website, complaining of the unclear billing practices and confusing cancellation policy associated with the HelloFresh Subscriptions:[26]

///

///

///

---

[23] https://www.deceptive.design/

[24] https://www.reddit.com/r/hellofresh/comments/teplda/cancelling_after_one_week/

[25] https://twitter.com/AmandaC52824691/status/1556342440436678656

[26] *See* https://www.bbb.org/us/ny/new-york/profile/food-delivery/hellofresh-0121-142623/customer-reviews



**Carole L.**
Hugo, MN
📷 7  ⭐ 3

⭐☆☆☆☆  4/24/2022

I ordered from HelloFresh without totally realizing how much they would charge after the first promotional charge. I waited a couple days and called and **cancelled** my order. I requested that the charges be reversed and they said they would. As I kept getting emails from them I called them again two times to be sure that my account had been **canceled** and there would be no further orders placed. I again affirmed that I wanted that first order **canceled** as I felt they had plenty of time to do that. Everyone I talk to was very obliging and said that they would **cancel** the order and reverse the charge. Well today I got my first box of HelloFresh and was definitely charged for it. I am extremely angry as I don't know how you **cancel** with this company for that reason I am giving them a one star. I haven't tried the food it looks like it may be fresh but again I wanted to **cancel** and they never **canceled** my order. I will have to call them again and make sure there are no further orders coming and if they are I will refuse to pay for it. Be careful in ordering from this company.

◎ Useful   😊 Funny   😎 Cool



**Andres S.**
Pasadena, CA
📷 412  ⭐ 3

⭐☆☆☆☆  5/11/2022

The don't make it clean that You signed up for a subscription. Not just a trial. Even if you **cancel** at the start of the week they will still charge you for that week and send you a box of the end of that week which comes out to $100.

◎ Useful   😊 Funny   😎 Cool



**Slm T.**
Charlotte, NC
📷 0  ⭐ 1

⭐☆☆☆☆  4/29/2022

Horrible experience !!! First time user and I created an account just too all of my option and now I have a meal being delivered that 1. I didn't even select 2. Can't eat once it gets here. all customer service said was that it was user error when I even **cancelled** the account once I saw I didn't like the meal options. Customer service first said because it wasn't **cancelled** by 11:59pm 5 days before the delivery when in fact it was **cancelled** per my email received. then once I informed him of that his story changed. Be careful !!! Never trying again or recommending. They only get a one star review because you're forced to leave atleast one star to make a review

21.    Other subscribers to the HelloFresh Subscription left similar complaints at
TrustPilot.com[27]:



1



ML   **Monica Lehmann**
       1 review   ⊙ US

2

3   ⭐☆☆☆☆                                                    May 25, 2022

**Pay to browse**

4   In order to look at the menu items you have to submit a payment
    information. Beware because if you don't like the selections even if you

5   <mark>cancel</mark> the membership & don't recieve anything from the company you
    will be charged right away. When you try to contact them they will tell

6   you that your account was deactivated but it's to late for you to get your
    money back. My account was opened for 10 minutes. The company told

7   me they could only provide me with half of my money back. You get
    charged to browse thier website.

8



CA   **Cinthia Avila**
       1 review   ⊙ US

9

10   ⭐⭐☆☆☆                                                   Mar 29, 2022

**subscription can be confusing**

11   The meal plans themselves are pretty practical and easy to cook. However, as I
     only signed up for a discount package to try them out, they continued to charge

12   me for following boxes as it's confusing that you yourself need to <mark>cancel</mark> before
     they charge for the box that does not include the discount anymore. Technically no

13   free meals, only discounts throughout boxes being delievered.

14

     **Colin Kerr**
     2 reviews   ⊙ US

15

16   ⭐☆☆☆☆   ✔ Invited                                        Apr 21, 2022

17   **Deceptive Promotions for Subpar Ingredients**

     Deceptive promotions designed to lock you into subscriptions, then

18   made it difficult to <mark>cancel</mark> when I tried. When I tried again to <mark>cancel</mark>, this
     time via phone, I got a rep who just spent the phone conversation

19   making long and lame attempts to get me to stay on a subscription I
     explicitly communicated I had no desire for.

20

21   Oh, and the ingredients were subpar. I could have picked them up in the
     grocery store in 5 minutes, with better quality.

22



     **Courtney Taborn**
     1 review   ⊙ US

23

24   ⭐☆☆☆☆   ✔ Invited                                        Apr 9, 2022

**Good food but predatory business practices**

25   I was gifted a free box from a friend. Unfortunately the subscription was renewed
     without my consent and I am now stuck with a bill for $90 and no way to <mark>cancel</mark>. I

26   received NO communication about an upcoming order or charge, I only learned of
     it through a bank statement. When I called I was told there was nothing that could

27   be done. I wasn't offered a refund or a coupon or anything which makes me think
     they don't really care about customer retention.

28   Because of this I cannot in good conscious recommend the service to friends or
     family even with one week free.

22.     Defendant's use of dark patterns to enroll customers into its HelloFresh Subscriptions is so nefarious that it prompted Truth in Advertising, a consumer protection nonprofit organization, to send complaint letters to the Federal Trade Commission ("FTC") and Connecticut's state regulators detailing Defendant's deceptive marketing in full.[28]

23.     The above reviews and Truth in Advertising letters are just a sampling of the widespread pattern of uniform unlawful conduct by Defendant, underscoring the artifice devised and employed by Defendant to lure and deceive millions of consumers into enrolling, and remaining enrolled, in its paid HelloFresh Subscription programs.

**C.     California's Automatic Renewal Law**

24.     In 2010, the California Legislature enacted the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, with the intent to "end the practice of ongoing charging of consumer credit or debit cards or third-party payment accounts without the consumers' explicit consent for ongoing shipments of a product or ongoing deliveries of service." Cal. Bus. & Prof. Code § 17600 (statement of legislative intent). More recently, in 2018, California's Senate Bill 313 amended Section 17602 of the ARL, adding new requirements meant to increase consumer protections for, among other things, orders that contain free trial and promotional pricing, and subscription agreements entered into online.

25.     The ARL makes it "unlawful for any business making an automatic renewal or continuous service offer to a consumer in this state to do any of the following:"

> (1)     Fail to present the automatic renewal offer terms or continuous service offer terms in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity, or in the case of an offer conveyed by voice, in temporal proximity, to the request for consent to the offer. If the offer also includes a free gift or trial, the offer shall include a clear and conspicuous explanation of the price that will be charged after the trial ends or the manner in which the subscription or purchasing agreement pricing will change upon conclusion of the trial.

---

[28] *See* Exhibits A and B.

(2)     Charge the consumer's credit or debit card, or the consumer's account with a third party, for an automatic renewal or continuous service without first obtaining the consumer's affirmative consent to the agreement containing the automatic renewal offer terms or continuous service offer terms, including the terms of an automatic renewal offer or continuous service offer that is made at a promotional or discounted price for a limited period of time.

(3)     Fail to provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer. If the automatic renewal offer or continuous service offer includes a free gift or trial, the business shall also disclose in the acknowledgment how to cancel, and allow the consumer to cancel, the automatic renewal or continuous service before the consumer pays for the goods or services.

Cal. Bus. & Prof. Code § 17602(a)(1)-(3).

26.     Section 17602(b) of the ARL further provides:

A business that makes an automatic renewal offer or continuous service offer shall provide another cost-effective, timely, and easy-to-use mechanism for cancellation that shall be described in the acknowledgment specified in paragraph (3) of subdivision (a).

Cal. Bus. & Prof. Code § 17602(b).

27.     Additionally, following the 2018 amendment to the ARL, the updated law requires e-commerce sellers, doing business in California, to allow online cancellation of auto-renewing memberships or recurring purchases that were initiated online. Specifically, Section 17602(c) provides:

[A] consumer who accepts an automatic renewal or continuous service offer online shall be allowed to terminate the automatic renewal or continuous service *exclusively online*, which may include a termination email formatted and provided by the business that a consumer can send to the business without additional information.

Cal. Bus. & Prof. Code § 17602(c) (emphasis added).

28.      The updated ARL also requires a seller who provides an automatic offer that includes a free gift, trial, or promotional pricing to notify consumers about how to cancel the auto-renewal before they are charged. Sellers must also explain the price to be charged when the promotion or free trial ends. If the initial offer is at a promotional price that is only for a limited time and will increase later, the seller must obtain consumer consent to the non-discounted price prior to billing. *Id.* Section 17601(a) of the ARL defines the term "Automatic renewal" as a "plan or arrangement in which a paid subscription or purchasing agreement is automatically renewed at the end of a definite term for a subsequent term." Cal. Bus. & Prof. Code § 17601(a).

29.      Section 17601(b) of the ARL defines the term "Automatic renewal offer terms" as "the following clear and conspicuous disclosures: (1) That the subscription or purchasing agreement will continue until the consumer cancels. (2) The description of the cancellation policy that applies to the offer. (3) The recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known. (4) The length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer. (5) The minimum purchase obligation, if any." Cal. Bus. & Prof. Code § 17601(b).

30.      Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c).

31.      Finally, Section 17603 of the ARL provides that where a "business sends any goods, wares, merchandise, or products to a consumer, under a continuous service agreement or automatic renewal of a purchase, without first obtaining the consumer's affirmative consent[,]" the material sent will be deemed "an unconditional gift to the consumer, who may use or dispose of the same in any manner he or she sees fit without any obligation whatsoever on the consumer's part to the business[.]" Cal. Bus. & Prof. Code § 17603.

32.     As alleged below, Defendant's practices on the HelloFresh Website systematically violate Sections 17602(a)(l), 17602(a)(2), and 17602(a)(3) of the ARL.

**D.     Defendant's Business: The Subscription Enrollment Process**

33.     At all relevant times, Defendant offered, via the HelloFresh Website, the HelloFresh Subscriptions, which provides customizable meal kits delivery. Defendant offers these paid subscriptions on a recurring basis, and all plans automatically renew on a weekly basis unless the subscriber skips a meal or cancels their subscription five days prior to the next weekly delivery. Defendant's HelloFresh Subscriptions constitute automatic renewal and/or continuous service plans or arrangements for the purposes of Cal. Bus. & Prof. Code § 17601.

34.     To sign up for one of Defendant's HelloFresh Subscriptions, the consumer must first select their desired food kit delivery based on their food preferences and the number of servings per week. From a single webpage, prospective subscribers can review and compare the features of Defendant's HelloFresh Subscriptions.

35.     The enrollment process for each HelloFresh Subscription is substantially the same, regardless of the medium used. After selecting a subscription option, consumers are directed to subsequent webpages on the HelloFresh Website, where they are prompted to create a membership account and input their billing information. After these steps, consumers are directed to another, final webpage (the "Checkout Page"), where prospective subscribers are invited to complete their purchases. For the purposes of the ARL and this Complaint, the "relevant portion of the Checkout Page" refers to the text of that portion of the Checkout Page that appears "in visual proximity to the request for consent to the offer[,]" which in this case pertains to the latter block of text located immediately above the final green "Place order & select meals" button that customers must press in order to complete the checkout process.

36.     By way of example, at least as of August 2022, when a consumer signed up for a HelloFresh Subscription via his or her computer web browser, the "relevant portion of the Checkout Page" refers to the disclosures in the block of text above the green "Place order & select meals" button (*i.e.*, the "request for consent"), which contains the following language

1    and appearance (red box added for emphasis):



22        37.     Regardless of how the consumer subscribes (via the HelloFresh Website on its

23   mobile or desktop format), and irrespective of which particular HelloFresh Subscription plan the

24   consumer selects, Defendant fails to disclose the full terms of its auto-renewal program either

25   before or after checkout, and it never requires the individual to read or affirmatively agree to any

26   terms of service, *i.e.*, by requiring consumers to click a checkbox next to the automatic renewal

27   offer terms before consumers complete the checkout process and submit their orders for

28   Defendant's HelloFresh Subscriptions. Consequently, Defendant uniformly fails to obtain any form

1    of consent from – or even provide effective notice to – its subscribers before charging consumers'

2    Payment Methods on a recurring basis.

3        **E.    Defendant Violates California's Automatic Renewal Law**

4        38.    At all relevant times, Defendant failed to comply with the ARL in three ways: (i)

5    Defendant failed to present the automatic renewal offer terms in a clear and conspicuous manner

6    and in visual proximity to the request for consent to the offer before the subscription or purchasing

7    agreement was fulfilled, in violation of Cal. Bus. & Prof. Code § 17602(a)(l); (ii) Defendant

8    charged Plaintiff's and the proposed class members' Payment Methods without first obtaining their

9    affirmative consent to the agreement containing the automatic renewal offer terms, in violation of

10   Cal. Bus. & Prof. Code § 17602(a)(2); and (iii) Defendant failed to provide an acknowledgment

11   that included the automatic renewal offer terms, cancellation policy, and information regarding

12   how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal.

13   Bus. & Prof. Code §§ 17602(a)(3).

14       **i.    <u>Defendant Fails To Clearly And Conspicuously Present The HelloFresh
             Subscription Automatic Renewal Terms</u>**

15       39.    As explained in greater depth below, the relevant portion of Defendant's Checkout

16   Page does not clearly and conspicuously present the HelloFresh Subscription's complete

17   "automatic renewal offer terms[,]" as defined by Cal. Bus. & Prof. Code §17601(b). First,

18   Defendant fails to clearly and conspicuously disclose that "the subscription or purchasing

19   agreement will continue until the consumer cancels" as defined by Cal. Bus. & Prof. Code §

20   17601(b)(1). As illustrated by the Checkout Page above, although the relevant portion mentions

21   that "unless I cancel" consumers will be enrolled in a "weekly auto-renewal price of $__ after my

22   discount period ends," this disclosure is inadequate because it fails to specify what exactly is the

23   ***"discount period."*** Indeed, the only place where a subscriber might find out their "discount period"

24   is located under the "Order summary" section located in the upper right corner of the Checkout

25   Page within a sentence that states "[e]njoy more savings for another 6 weeks!" Yet, that sentence

26   does not use the words ***"discount period"*** but rather ***"more savings."*** Further, the "more savings"

27   statement precedes the price of seven boxes: making it unclear whether the "more savings" period

28

refers to seven or "6 weeks" from the date of purchase. To make matters worse, the "more savings" section is overshadowed by the actual use of the word ***"Discount"*** –located in the same location— which clearly relates to the ***"First box total"*** amount stated underneath: both of which are written in a larger font and/or red ink color. As such, the Checkout Page gives consumers the impression that they are only purchasing a single box at a discounted price rather than enrolling in a "discount period," followed by a continuous subscription. Aside from being inconspicuous, as discussed in greater depth below, the Checkout Page thus fails to disclose "[t]hat the subscription or purchasing agreement will continue until the consumer cancels" in the manner required by the statute. Cal. Bus. & Prof. § 17601(b)(1).

40.     Second, Defendant fails to disclose the "description of the cancellation policy that applies to the offer" as defined by Cal. Bus. & Prof. Code § 17601(b)(2). Specifically, although the Checkout Page states that subscribers can "cancel your subscription through your account 5 days prior to delivery," it fails to indicate the delivery date. Indeed, the only way that a consumer could plausibly find the applicable "delivery date" would be by looking at the "Delivery summary" portion of the Checkout Page on the far right, which states, in a faint grey font against a grey background, that "[y]ou will get your box every Saturday." Aside from its large visual displacement, along with its barely legible text, the cancellation policy also fails to disclose that all orders must be canceled by 11:59 PM Pacific Time Zone, rather than the time zone where consumers are located at the time that they wish to cancel their subscription. Aside from being inconspicuous, as discussed in greater depth below, the Checkout Page also fails to disclose the "description of the cancellation policy that applies to the offer" in the manner required by statute. Cal. Bus. & Prof. § 17601(b)(2).

41.     Third, Defendant fails to disclose the "recurring charges that will be charged to the consumer's credit or debit card or payment account with a third party as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known" as defined by Cal. Bus. & Prof. Code § 17601(b)(3). Specifically, although the Checkout Page indicates that consumers "will be charged the day after your cutoff deadline," it only allows consumers to review the "cutoff date," "after you

have registered." Defendant thus requires subscribers to enroll in its HelloFresh Subscription before being able to see how often they will be billed.  Further, the "savings" fees disclosure fails to indicate that the recurring charges are subject to change if the subscriber modifies any of their "discount" food kits (thus increasing the price per box). Aside from being inconspicuous, as discussed in greater depth below, the Checkout Page fails to disclose the "recurring charges that will be charged to the consumer's credit or debit card or payment …and that the amount of the charge may change, if that is the case, and the amount to which the charge will change, if known" as defined by Cal. Bus. & Prof. Code § 17601(b)(3).

42.     Finally, Defendant fails to disclose the "length of the automatic renewal term or that the service is continuous" as defined by Cal. Bus. & Prof. Code § 17601(b)(4). Specifically, although the Checkout Page states that subscribers would be enrolled in a "weekly auto-renewal plan" after the expiration of the undefined "discount period," this disclosure does not indicate the length, but rather the "price" of the auto-renewal. As such, Defendant failed to alert consumers that they would be enrolling in a "continuous" subscription that would run in perpetuity, as defined by Cal. Bus. & Prof. Code § 17601(b)(4).

ii.     **Defendant Fails To Clearly And Conspicuously Present The HelloFresh Subscription Terms Before The Subscription Agreement Is Fulfilled And In Visual Proximity To The Request For Consent To The Offer.**

43.     Because Defendant failed to present the full "automatic renewal offer terms" of its HelloFresh Subscriptions on its Checkout Page, as defined by Cal. Bus. & Prof. Code §17601(b), it, therefore, failed to present these material terms "before the subscription or purchasing agreement [was] fulfilled", in violation of Cal. Bus. & Prof. Code § 17602(1). Further, even if Defendant has presented the full "automatic renewal offer terms" of its HelloFresh Subscriptions (it did not), those terms were not presented "in a clear and conspicuous manner… and in visual proximity… to the request for consent to the offer" in violation of Cal. Bus. & Prof. Code § 17602(1).

44.     Pursuant to Section 17601(c) of the ARL, "clear and conspicuous" or "clearly and conspicuously" means "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size

by symbols or other marks, in a manner that clearly calls attention to the language." Cal. Bus. & Prof. Code § 17601(c). Defendant's inadequate "automatic renewal terms" fall well short of the mark from being conspicuous as defined under the ARL.

45.     First, even if "weekly auto-renewal price" text on the Checkout Page complied with the ARL, it is nonetheless deficient because it is smaller than the text featured in and under the "Payment information," "Order Summary," and "Delivery Summary," headers, which fill up the vast majority of the Checkout Page.  Additionally, the disclosure is presented in the same size, color, and font as that of the surrounding block of text.  Moreover, the disclosure is placed alongside other, unrelated disclosures without distinction from the surrounding text of the same size in any manner that calls attention to the language.  The lack of distinction causes the disclosure to blend into the accompanying text of the same size and font featured within the same block of text above the "Place order" button.  At the same time, the text of that block is less obvious or noticeable than the rest of the colorful text and vignettes on the Checkout Page—which use larger font and colors (green and red)—and draws the eye's attention much more readily than the text in question.  Compared to the text above the "Place order" button, the green (and larger and/or bolded) text of the Checkout Page visually stands out, drawing attention away from the text at issue.  In other words, the disclosure was presented in such a way that it could be, and was, easily overlooked, and is therefore not "clear and conspicuous" as defined by Cal. Bus. & Prof. Code § 17601(c). Similarly, the deficient "cut off" disclosure is found on the lower right corner of the Checkout Page under the "FAQs" (requiring subscribers to scroll down underneath the "Place order" button) and is written in barely legible grey font against a gray background. Thus, this disclosure also is neither "clear and conspicuous" as defined under Section 17601(c) of the ARL, nor "in visual proximity… to the request for consent to the offer" in violation of Cal. Bus. & Prof. Code § 17602(1).

46.     In addition, the relevant portion of the Checkout Page fails to adequately disclose the recurring amount to be charged to the subscriber's Payment Method each billing period. Specifically, although the Checkout Page contains some relevant information regarding the fees associated with the consumer's "savings for another 6 weeks," it nevertheless fails to comply with

the statute because this price information is placed in the block of text positioned near the top of the Checkout Page under the "Discount" portion of the "Order summary" section, whereas the "Place order" button appears towards the bottom of the Checkout Page. This problem is compounded because the "savings" fees are overshadowed by the much large "First box total" text set forth underneath. Thus, this disclosure also is neither "clear and conspicuous" as defined under Section 17601(c) of the ARL, nor "in visual proximity… to the request for consent to the offer" in violation of Cal. Bus. & Prof. Code § 17602(1).

     iii.     **<u>Defendant Fails To Obtain Consumers' Affirmative Consent To The Automatic Renewal Terms Associated With The HelloFresh Subscriptions.</u>**

     47.     Furthermore, Defendant unlawfully charged Plaintiff's and the proposed class members' Payment Methods without first obtaining their affirmative consent to the agreement containing the automatic renewal (and continuous service terms), including their promotional and discounted prices, in violation of Cal. Bus. & Prof. Code § 17602(2). Specifically, Defendant does not at any point during the checkout process require consumers to read or affirmatively agree to any terms of service associated with their HelloFresh Subscriptions, *e.g.*, by requiring consumers to select or click a "checkbox" next to the automatic renewal offer terms to complete the checkout process. In fact, as discussed above, the only terms that consumers could have purportedly agreed to, even without a checkbox manifesting affirmative consent, was that "[b]y clicking 'Place order & select meals', I agree…unless I cancel, to the weekly auto-renewal price of $__ after my discount period ends." That call to action, however, only specifies the price of the "weekly auto-renewal" following the "discount period" and it is unclear whether the statement "unless I cancel" relates to the cancelation policy of the "weekly auto-renewal" once it commences or that the "weekly auto-renewal" will commence unless a consumer "cancels" prior to the expiration of the "discount period." Indeed, the "unless I cancel" statement immediately precedes and modifies the "weekly auto renewal" statement—it does not clearly state, for example, "***unless I cancel prior to my discount period***, the auto-renewal price of $__." Thus, at no point, during the enrollment process or on the Checkout Page, was there an unambiguous or affirmative consent to Defendant's automatic-renewal terms in violation of Cal. Bus. & Prof. Code § 17602(2).

iv.      **Defendant Fails To Provide A Post-Checkout Acknowledgment That Clearly And Conspicuously Discloses The Required HelloFresh Subscription Offer Terms.**

48.      Finally, after Plaintiff and the proposed class members subscribed to one of Defendant's HelloFresh Subscription plans, Defendant sent email follow-ups regarding their purchases (the "Acknowledgment Emails").

49.      By way of example, as of 2022, the subject line of the email stated: "Welcome to the Fresh Fam!" The body of the email contained, in relevant part, the following text and images:





50.     The Acknowledgment Email contains even less of the required information than is featured on the relevant portion of the Checkout Page, discussed above. Namely, the purchase confirmation does not provide: that the subscription "will continue until the consumer cancels[,]" Cal. Bus. & Prof. Code § 17601(b)(1); a "description of the cancellation policy that applies to the offer[,]" Cal. Bus. & Prof. Code § 17601(b)(2); a statement of "[t]he recurring charges that will be charged to the consumer's [Payment Method] as part of the automatic renewal plan or arrangement, and that the amount of the charge may change, [and] if that is the case, and the amount to which the charge will change, Cal. Bus. & Prof. Code § 17601(b)(3); or "[t]he length of the automatic renewal term or that the service is continuous, unless the length of the term is chosen by the consumer[,]" Cal. Bus. & Prof. Code § 17601(b)(4). As such, the Acknowledgment Email fails to "include[] the automatic renewal offer terms … and information regarding how to cancel in a manner that is capable of being retained by the consumer[,]" in violation Cal. Bus. & Prof. Code § 17602(a)(3).

51.     At all relevant times, Defendant has been well aware that its HelloFresh Subscriptions fail to comply with California's ARL as evidenced by the number of complaints lodged against it in the Better Business Bureau website and the complaints sent by the Truth in Advertising to the FTC. The facts giving rise to Plaintiff's claims are materially the same as the Class he seeks to represent.

52.     By and through these actions, Defendant has charged Plaintiff's and the proposed class members' Payment Methods in direct violation of the ARL. As a result, all goods, wares, merchandise, or products sent to Plaintiff and the Class under the automatic renewal of continuous service agreements are deemed to be "unconditional gifts" pursuant to Cal. Bus. & Prof. Code § 17603.

## CLASS ACTION ALLEGATIONS

53.     **Class Definition**: Plaintiff brings this action pursuant to Rule 23(a) of the Federal Rules of Civil Procedure on behalf of a class of similarly situated individuals, defined as follows (the "Class"):

All persons in California who, within the applicable statute of
limitations period, up to and including the date of final judgment in
this action, incurred renewal fee(s) in connection with Defendant's
HelloFresh Subscription offerings.

54.     Specifically excluded from the Class are Defendant and any entities in which

Defendant has a controlling interest, Defendant's agents and employees, the judge to whom this

action is assigned, members of the judge's staff, and the judge's immediate family.

55.     Plaintiff reserves the right to amend the definitions of this Class if discovery or

further investigation reveals that the Class should be expanded or otherwise modified.

56.     ***Numerosity***. Members of the Class are so numerous that their individual joinder

herein is impracticable. On information and belief, the Class comprises at least thousands of

consumers throughout California. The precise number of Class members and their identities are

unknown to Plaintiff at this time but may be determined through discovery. Class members may be

notified of the pendency of this action by mail and/or publication through the distribution records

of Defendant.

57.     ***Commonality and Predominance***. Common questions of law and fact exist as to all

Class members and predominate over questions affecting only individual Class members. Common

legal and factual questions include, but are not limited to: (a) whether Defendant's HelloFresh

Subscriptions constitute "Automatic renewal[s]" within the meaning of Cal. Bus. & Prof. Code §

17601(a); (b) whether Defendant failed to present the automatic renewal offer terms, or continuous

service offer terms, in a clear and conspicuous manner before the subscription or purchasing

agreement was fulfilled and in visual proximity to the request for consent to the offer, in violation

of Cal. Bus. & Prof. Code § 17602(a)(l); (c) whether Defendant charged Plaintiff's and Class

members' Payment Method for an automatic renewal service without first obtaining their

affirmative consent to the automatic renewal offer terms in violation of Cal. Bus. & Prof. Code§

17602(a)(2); (d) whether Defendant failed to provide an acknowledgement that included the

automatic renewal or continuous service offer terms, cancellation policy, and information on how

to cancel in a manner that is capable of being retained by Plaintiff and the Class, in violation of

Cal. Bus. & Prof. Code § 17602(a)(3); (e) whether the goods and services provided by Defendant

are deemed an "unconditional gift" in accordance with Cal. Bus. & Prof. Code § 17603; (f) whether Defendant's conduct alleged herein violated California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq*., California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*., and/or California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq*.; (g) whether Defendant's conduct alleged herein constitutes conversion and/or unjust enrichment; (h) whether Plaintiff and the Class are entitled to damages and/or restitution; (i) whether Defendant should be enjoined from further engaging in the misconduct alleged herein; and (j) whether Plaintiff and the Class are entitled to attorneys' fees and costs  under California Code of Civil Procedure § 1021.5.

58.     ***Typicality.*** The claims of Plaintiff are typical of the claims of the Class in that Plaintiff and the Class sustained damages as a result of Defendant's uniform wrongful conduct, based upon Defendant's failure to obtain Plaintiff's and the Class's affirmative consent to the automatic renewal offer terms or continuous service offer terms associated with the HelloFresh Subscriptions before charging their Payment Methods.

59.     ***Adequacy.*** Plaintiff will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests, and Plaintiff has retained counsel that have considerable experience and success in prosecuting complex class-actions and consumer protection cases.

60.     ***Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this controversy for, inter alia, the following reasons: prosecutions of individual actions are economically impractical for members of the Class; the Class is readily definable; prosecution as a class action avoids repetitious litigation and duplicative litigation costs, conserves judicial resources, and ensures uniformity of decisions; and prosecution as a class action permits claims to be handled in an orderly and expeditious manner.

61.     Defendant has acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

62.     Without a class action, Defendant will continue a course of action that will result in further damages to Plaintiff and the Class and will likely retain the benefits of its wrongdoing.

63.     Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

**COUNT I**
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***

64.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

65.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

66.     The UCL prohibits unfair competition in the form of "any unlawful, unfair, or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act[.]" Cal. Bus. & Prof. Code § 17200. The UCL allows "a person who has suffered injury in fact and has lost money or property" to prosecute a civil action for violation of the UCL. Cal. Bus. & Prof. Code § 17204. Such a person may bring such an action on behalf of himself or herself and others similarly situated who are affected by the unlawful and/or unfair business practice or act.

67.     As alleged in more detail below, Defendant's acts and practices alleged herein are "unlawful" within the meaning of the UCL because they violated the following laws, regulations, and rules, including the Automatic Renewal Law ("ARL"), Cal. Bus. & Prof. Code §§ 17600, *et seq.*, as well as the CLRA, FAL, and all other consumer protection statutes and common laws as asserted in Counts II through V below.

Violations of California's Automatic Renewal Law

68.     Additionally, at all relevant times, Defendant has violated, and continues to violate, the UCL's proscription against engaging in unlawful and/or unfair conduct as a result of its violations of the ARL, Cal. Bus. & Prof. Code §§ 17600, *et seq.*, as alleged in the above paragraphs of this complaint, which are incorporated herein by reference.

69.     Specifically, Defendant failed, and continues to fail, to: (a) provide the automatic renewal terms associated with its HelloFresh Subscription "in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity[] … to the request for consent to the offer[,]" in violation of Cal. Bus. & Prof. Code § 17602(a)(1); (b) obtain

the affirmative consent of Plaintiff and the Class to those terms before charging their Payment Method, in violation of Cal. Bus. & Prof. Code § 17602(a)(2); and (c) provide an acknowledgment that includes the automatic renewal or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer, in violation of Cal. Bus. & Prof. Code §§ 17602(a)(3). Defendant also makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their HelloFresh Subscriptions, in violation of Cal. Bus. & Prof. Code § 17602(b).

70.     Each of these acts and practices constitutes an independent violation of the ARL, and thus an independent violation of the UCL.

71.     All products received from Defendant in violation of the ARL, Cal. Bus. Prof. Code §§ 17602, *et seq*., constitute "unconditional gifts." See Cal. Bus. Prof. Code § 17603.

72.     As a direct and proximate result of Defendant's unlawful and/or unfair practices described herein, Defendant has received, and continues to hold, unlawfully obtained property and money belonging to Plaintiff and the Class in the form of payments made by Plaintiff and the Class for their HelloFresh Subscriptions. Defendant has profited from its unlawful and/or unfair acts and practices in the amount of those business expenses and interest accrued thereon. Thus, Plaintiff have suffered injury in fact and lost money or property as a result of Defendant's violations of California's ARL.

73.     Defendant was prohibited from making these charges and taking Plaintiffs' money without the required affirmative consent. If Defendant had complied with the law, Defendant could not have made the charges, and would not have obtained this money from Plaintiff.

Violations of Other Statutes and Common Laws

74.     Furthermore, alleged below, Defendant has committed unlawful and/or unfair business practices under the UCL by: (a) representing that Defendant's goods and services have certain characteristics that they do not, in violation of Cal. Civil Code § 1770(a)(5); (b) advertising goods and services with the intent not to sell them as advertised, in violation of Cal. Civil Code § 1770(a)(9); and (c) converting to Defendant's own use and benefit money that rightfully belongs to Plaintiff and the Class.

75.     Defendant's acts and omissions as alleged herein violate obligations imposed by statute, are substantially injurious to consumers, offend public policy, and are immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

76.     There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

77.     Defendant's acts, omissions, nondisclosures, and misleading statements as alleged herein were and are false, misleading, and/or likely to deceive the consuming public.

78.     Plaintiff and the members of the Class have suffered a substantial injury in fact and lost money by virtue of Defendant's acts of unfair competition, which caused them to purchase the HelloFresh Subscriptions. Had Defendant complied with its disclosure obligations under the ARL, Plaintiff and members of the Class would not have purchased their HelloFresh Subscriptions or would have canceled their HelloFresh Subscriptions prior to the renewal of the subscriptions, so as to not incur additional fees. Thus, Plaintiff and members of the Class were damaged and have suffered economic injuries as a direct and proximate result of Defendant's unlawful and/or unfair business practices.

79.     Defendant's violations have continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this unlawful course of conduct. The public and the Class are subject to ongoing harm because the unlawful and/or unfair business practices associated with the HelloFresh Subscriptions are still used by Defendant today.

80.     Plaintiff and the Class seek restitution pursuant to Cal. Bus. & Prof. Code § 17203 of all amounts that Defendant charged or caused to be charged to Plaintiff's and the Class's Payment Methods in connection with their HelloFresh Subscriptions during the four years preceding the filing of this Complaint. Defendant should be required to disgorge all the profits and gains it has reaped and restore such profits and gains to Plaintiff and the Class, from whom they were unlawfully taken.

81.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff and members of the Class seek a court order enjoining Defendant from such future misconduct, and any other such orders that may be necessary to rectify the unlawful business practices of Defendant.

82.     Plaintiff, individually and on behalf of similarly situated California consumers, brings this action as private attorneys general and to vindicate and enforce an important right affecting the public interest. Plaintiff and the Class are therefore entitled to an award of attorneys' fees under Code of Civil Proc. § 1021.5 for bringing this action.

## COUNT II
### Conversion

83.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

84.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

85.     As a result of charges made by Defendant to Plaintiff's and Class members' Payment Methods without authorization and in violation of California law, Defendant has taken money that belongs to Plaintiff and the Class.

86.     The amount of money wrongfully taken by Defendant is capable of identification.

87.     Defendant engaged in this conduct knowingly, willfully, and with oppression, fraud, and/or malice within the meaning of Cal. Civil Code § 3294(c).

88.     As a result of Defendant's actions, Plaintiff and the Class have suffered damages.

## COUNT III
### Violations of California's False Advertising Law ("FAL"),
### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

89.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

90.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

91.     California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated

before the public in this state, …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

92.      Defendant committed acts of false advertising, as defined by § 17500, by intentionally making and disseminating statements to consumers in California and the general public concerning Defendant's products and services, as well as circumstances and facts connected to such products and services, which are untrue and misleading on their face and by omission, and which are known (or which by the exercise of reasonable care should be known) by Defendant to be untrue or misleading. Defendant has also intentionally made or disseminated such untrue or misleading statements and material omissions to consumers in California and to the public as part of a plan or scheme with intent not to sell those services as advertised.

93.      Defendant's statements include but are not limited to representations and omissions made to consumers before and after enrollment in Defendant's HelloFresh Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments. For instance, Defendant's representation on the Checkout Pages of the HelloFresh Website that members can "cancel" their HelloFresh Subscription is contradicted by their policy set forth elsewhere on the HelloFresh Website that customers must cancel their HelloFresh Subscriptions by 11:59 PM Pacific Time Zone before the next charge. In light of Defendant's disclosure of the former and silence as to the latter on the Checkout Pages for the HelloFresh Subscriptions, the representations and omissions on the Checkout Pages constitute false and deceptive advertisements. Similarly, Defendant misleads consumers into believing that they would only be paying a "Discount[ed]" charge for a single "box," rather than a continuous charge, by prominently displaying the "First box total charge" for their "First delivery" on the "Order summary," and "Delivery summary" and portions of the Checkout Page and then burying within a barely legible block of text that consumers were being enrolled into a "weekly auto-renewal."

94.     Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public is and was likely to be deceived.

95.     Defendant knew that its actions were misleading based on the sheer number of complains that it has received from consumers who were unwillingly enrolled into its HelloFresh Subscriptions under false pretenses.

96.     Plaintiff and the members of the Class were deceived by Defendant's statements and omissions made online when they signed up and started paying for their HelloFresh Subscriptions, and other California consumers and members of the public were also or are likely to be deceived as well. Any reasonable consumer would be misled by Defendant's false and misleading statements and material omissions. Plaintiff and other members of the Class did not learn of Defendant's HelloFresh Subscription price, cancellation, and automatic payment policies until after they had already signed up and started paying for Defendant's HelloFresh Subscription. Thus. they relied on Defendant's statements and omissions to their detriment.

97.     Plaintiff and the Class lost money or property as a result of Defendant's FAL violations because they would not have purchased the HelloFresh Subscriptions on the same terms if the true facts were known about the product and the HelloFresh Subscriptions do not have the characteristics or the purchase price as promised by Defendant.

98.     Plaintiff, individually and on behalf of all similarly situated California consumers, seeks individual, representative, and public injunctive relief and any other necessary orders or judgments that will prevent Defendant from continuing with its false and deceptive advertisements and omissions; restitution that will restore the full amount of their money or property; disgorgement of Defendant's relevant profits and proceeds; and an award of costs and reasonable attorneys' fees.

### COUNT IV
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code §§ 1750, *et seq.***

99.     Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

100.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

101.     Plaintiff and the members of the Class are "consumers" within the meaning of Cal. Civil Code § 1761(d) in that Plaintiff and the Class sought or acquired Defendant's goods and/or services for personal, family, or household purposes.

102.     Defendant's selection and/or subscription offers and the video, music, and other products pertaining thereto are "goods" and/or "services" within the meaning of Cal. Civil Code § 1761(a) and (b). The purchases by Plaintiff and the Class are "transactions" within the meaning of Cal. Civil Code § 1761(e).

103.     The acts and practices of Defendant as described above were intended to deceive Plaintiff and the Class as described herein, and have resulted, and will result, in damages to Plaintiff and the Class. These actions violated, and continue to violate, the CLRA in at least the following respects: (a) Defendant's acts and practices constitute representations or omissions deceiving that the HelloFresh Subscriptions have characteristics, uses, and/or benefits, which they do  not, in violation of Cal. Civil Code §1770(a)(5); and (b) Defendant's acts and practices constitute  the advertisement of the goods in question without the intent to sell them as advertised, in violation  of Cal. Civil Code § 1770(a)(9).

104.     Plaintiff and the Class suffered economic injury as a direct result of Defendant's misrepresentations and/or omissions because they were induced to purchase HelloFresh Subscriptions and/or pay renewal fees they would not have otherwise purchased and/or paid. Had Defendant fully and clearly disclosed the terms and purchase price associated with the HelloFresh Subscriptions, Plaintiff and the Class would have not subscribed to the HelloFresh Subscriptions, or they would have cancelled their HelloFresh Subscriptions earlier, *i.e.*, prior to the expiration of the initial subscription period.

105.     Plaintiff and the California Subclass members presently seek only injunctive relief under this Count. If Defendant fails to remedy the violations alleged herein within 30 days of receipt of Plaintiff's notice, Plaintiff will amend this Complaint to add claims for actual, punitive, and statutory damages pursuant to the CLRA.

## COUNT V
**Unjust Enrichment / Restitution**

106.    Plaintiff re-alleges and incorporates by reference every allegation set forth in the preceding paragraphs as though alleged in this Count.

107.    Plaintiff brings this claim individually and on behalf of Class members under the laws of the State of California.

108.    To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

109.    Plaintiff and the Class conferred benefits on Defendant by purchasing the HelloFresh Subscriptions.

110.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff's and the Class's purchases of the HelloFresh Subscriptions. Retention of those moneys under these circumstances is unjust and inequitable because Defendant's failure to disclose material terms of the purchase agreement, in violation of California law, induced Plaintiff and the Class to purchase the HelloFresh Subscriptions. These omissions caused injuries to Plaintiff and the Class because they would not have purchased the HelloFresh Subscriptions at all, or on the same terms if the true facts were known.

111.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant has been unjustly enriched in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a)    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representatives of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

(b)    For an order declaring the Defendant's conduct violates the statutes referenced herein;

(c)     For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d)     For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

(e)     For prejudgment interest on all amounts awarded;

(f)     For an order of restitution and all other forms of equitable monetary relief;

(g)     For injunctive relief as pleaded or as the Court may deem proper; and

(h)     For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable as of right.

Dated:  September 7, 2022

**BURSOR & FISHER, P.A**.

By:  ___*/s/ L. Timothy Fisher*_____

L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-mail: ltfisher@bursor.com

Joseph I. Marchese (*pro hac vice* forthcoming)
Alec M. Leslie (*pro hac vice* forthcoming)
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
E-Mail: jmarchese@bursor.com
        aleslie@bursor.com

**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (*pro hac vice* forthcoming)
630 Fifth Avenue, Suite 2000
New York, NY 10111
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Attorneys for Plaintiff*